FILED
2005 Apr-21  PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MONEY MANAGEMENT | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO. CV-01-HS-2562-S** |
| | ) | |
| **v.** | ) | |
| | ) | |
| MARK P. PORRARO; et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF OPINION

This case comes before the Court on the Motion for Summary Judgment (doc. 60) filed by the Defendant Allmerica Life Insurance Company, Allmerica Financial Life Insurance and Annuity Company, Allmerica Investments, Inc., Allmerica Investment Management Co., Inc., and Mark Porraro.  Argument on the motion was heard on March 2, 2005.

## PROCEDURAL HISTORY

This case began on November 11, 2001, when the Plaintiff Money Management Services, Inc. (hereinafter "Money Management"), and its three individual shareholders commenced this action.   Since that time, the claims and parties involved in this litigation have undergone significant changes.  First, the plaintiffs have gone from four to one; the Court required the shareholders of Money

Management to arbitrate their claims, leaving Money Management as the sole remaining Plaintiff. (*See* docs. 19 & 20.) Second, the number of claims have fluctuated repeatedly, beginning with four claims in the original Complaint (doc. 1), increasing to five in the first amended Complaint (doc. 17), shrinking to three in the Amended and Restated Complaint (doc. 27); and increasing again to four in the Second Amended and Restated Complaint (doc. 59). The claims now are reduced to two; of the four brought in the Plaintiff's Second Amended and Restated Complaint, the Plaintiff has dismissed its fraud claim (Count II) (*see* doc. 60 at 2 n.1 & 2) and, in its opposition to summary judgment and in oral argument before the Court, the Plaintiff conceded its tortious interference claim (Count III).[1]   Thus, the only claims remaining in this action are Money Management's claims of breach of contract (Count I) and unjust enrichment (Count IV).

The only Defendants remaining in this action are Mark P. Porraro, First Allmerica Life Insurance Company, Allmerica Financial Life Insurance and Annuity Company, Allmerica Investments, Inc., and Allmerica Investment Management

---

[1]In its moving papers, Plaintiff failed to offer any arguments challenging the Defendants' argument that its tortious interference claim failed because the Defendants were not strangers to the contracts with which the Defendants allegedly interfered. *See Waddel & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So.2d 1145, 1153-53 (Ala. 2003) (plaintiff must establish that the defendant was a "third party" or "stranger" to a contract to prevail on a claim that a defendant tortiously interfered with the contract). In oral argument before the Court, the Plaintiff expressly conceded that the claim no longer was viable under current Alabama law.

Company, Inc.  Former Defendants Joan Tillet and Stephen Parker were dismissed from this action by this Court's orders, and the Plaintiff has dismissed its claims against Porraro & Associates.  The instant motion for summary judgment is brought by the five remaining Defendants, Porraro and the Allmerica entities.

The parties have filed briefs and submitted evidence in support of their respective positions.  The Defendants submitted evidence[2] in support of their motion for summary judgment and filed a supporting brief (doc. 61) on December 30, 2004.  On January 27, 2005, the Plaintiff filed evidence[3] in opposition to Defendants' motion for summary judgment and a brief (doc. 64) in response to the Defendants' motion for summary judgment.  The Defendants filed a reply (doc. 66) on February 7, 2005.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[2]The Defendants submitted the depositions of Donald Ray Rice and Mark Porraro.  Affidavits were submitted from Phillip Alston and Joan Tillet.  Defendants also submitted the agent contracts for Donald Rice, David Painter, and C. Todd Holder.  References to the deposition transcripts are denoted by the last name of the deponent, followed by the abbreviation "Dep." followed by the page number or the deposition exhibit being referenced.  Affidavits are denoted as "Aff."  Documents are identified by their title and date.

[3]The Plaintiff submitted the depositions of Joan E. Tillet and Richard M. Reilly and also submitted an affidavit of Charles E. Nowlin.  Plaintiff also submitted several letters and other documents.

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000)  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Id.* at 324.

All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

## FACTS

The Plaintiff Money Management is a Registered Investment Advisory doing business in Birmingham, Alabama.  It provides financial planning, consulting, and accounting services to its customers.  It also sells certain financial instruments, including insurance policies and annuities.  Money Management is owned by Donald Rice, Gwendolyn Rice, David Painter, and Todd Holder.  Donald Rice is the president of Money Management, and Painter and Holder are vice-presidents.  (*Id.* at 30-34.)

Money Management is the successor of Brooks, Rice & Associates.  (*Id*. at 148-49).  Brooks, Rice & Associates became a Registered Investment Advisory in 1992.  On August 1, 1996, it changed its name to Money Management Services and came under the current ownership.  (Rice Dep. at 148-79, 294-96.)

Rice, Painter, and Holder were career agents of the Defendant Allmerica, which previously was known as State Mutual Assurance Company of America.  (*See* Career Agent Agreement of Donald Rice, dated June 1, 1987, Def.'s ex. 2;  Career Agent Agreement of David Painter, dated Feb. 1, 1994, Def.'s ex. 3;  Career Agent Agreement of Todd Holder, dated June 1, 1994, Def.'s ex. 4.)  As career agents, Rice, Painter, and Holder were authorized to sell Allmerica insurance policies and annuities.  In return, Allmerica paid them commissions on each sale.  (*Id.*)

In late 1989 or early 1990, Rice developed a relationship with Bob Daniel who

worked for Southern Company in its employee benefit department. (Rice Dep. at 163-65.) This relationship led the Southern Company to invite Rice to present seminars to Southern Company employees working for subsidiaries such as Alabama Power and Southern Company Nuclear. (Rice Dep. at 166-67.) Through these seminars, Rice acquired many new customers to whom he provided financial services and sold a significant number of Allmerica annuities. (Nowlin Aff., date Jan. 26, 2005, at 4.)

On or about October, 1992, Rice and his former partner Ricky Brooks formed Brooks, Rice and Associates, Inc., the corporate predecessor to Money Management. In 1992 or 1993, Southern Company invited Rice to present seminars to its Georgia employees and retirees, including employees and retirees for Georgia Power. (Rice Dep. at 52-53, 281-82.)

However, under his career agent contract with Allmerica (which was then doing business as State Mutual), Rice could not immediately accept this invitation. (Nowlin Aff., dated Feb. 22, 2005, at 2.) Paragraph 2 of the Career Agent Agreement required Rice to "first obtain the consent of State Mutual" before "engag[ing] in any other activities for remuneration or profit which require his/her personal services." (Def.'s ex. 2, ¶ 2.) Furthermore, paragraph 8 of the Agreement prohibited Rice from "solicit[ing] by mail or otherwise any insurance or annuities outside the district

6

assigned to the General Agent without first receiving consent …."  Rice's contract identified Charles Nowlin as Rice's General Agent, *see id.*, and Nowlin's territory was confined to Birmingham and Alabama.  (Nowlin Aff., dated Jan. 26, 2005, at 3-4.)  Rice therefore had to receive permission from State Mutual before he could perform a seminar in Georgia.  (*Id.*)  Rice notified Nowlin, his General Agent, and Nowlin contacted Richard Reilly, the president of State Mutual.  (Nowlin Aff., dated Feb. 22, 2005, at 2.)  Reilly approved of Rice's request to solicit insurance sales outside of his territory provided that he form an agreement with Mark Porraro, the General Agent for Georgia.  Nowlin then contacted Porraro to arrange for him to have a meeting with Rice.  (Nowlin Aff., dated Jan. 26, 2005, at 3-4.)

It is undisputed that Rice eventually made an agreement with Joan Tillet, one of Porraro's career agents.  Under the agreement, Rice and Tillet agreed to split commissions.  The precise percentages of the commission splits varied depending on several factors.  (Rice Dep. at 77; Tillet Aff. ¶ 5–6.)  The commissions were split and paid to the parties by Allmerica.  (Rice Dep. at 372-73.)

It is undisputed that prior to making the arrangement with Rice, Tillet never had given a seminar to Southern Company employees.  (Tillet Dep. at 13,52.)  Under the agreement between Tillet and Rice, Rice gave four to six seminars to Southern Company employees in Georgia, and Tillet attended and participated in them.  (Rice

Dep. 356-57; Tillet Dep. 12.)  From 1995 to 2001, Tillet did approximately twenty-four seminars for Southern Company employees. (*Id.* at 44.)  As of September, 2001, Tillet was the largest producer in Defendant Porraro's agency.  (*Id.* at 10.)  At the time, she marketed herself primarily to employees of Southern Company, and Southern Company employees and retirees formed a large percentage of her client base. (*Id.* at 10, 19-20.)  Pursuant to the commission agreement, Rice received split commissions from Tillet until his career agent agreement was terminated on December 31, 2000.  (Rice Dep. at 393.)

In 1997, Nowlin retired as the General Agent for Allmerica in Alabama, and Allmerica appointed Porraro to replace him.  (Nowlin Aff. at 1; Porraro Dep. at 44.) On November 14, 2000, Allmerica gave Rice, Painter, and Holder notice that their career agent contracts with Allmerica would be terminated as of December 31, 2000. (Defendant's Summary Judgment ex. 5 (Letters from Allmerica to Rice, Holder, and Painter, dated Nov. 14, 2000).)  On December 31, 2000, the contracts were terminated.

From January 31, 2001, until August 12, 2004, career agents from Allmerica contacted and offered financial services to the clients of Rice, Holder, Painter, and the Plaintiff Money Management Services.  (Pla. ex. 4.)

8

## ANALYSIS

### I.    Breach of Contract

The Plaintiff brings two claims for breach of contract.  In the first, the Plaintiff seeks to recover commissions that allegedly are owed but were not paid.  In the second, Plaintiff seeks damages for the Defendants' violations of an alleged agreement that the Defendants would not interfere with the Plaintiff's business relationships with Southern Company employees in the State of Alabama.

As a threshold matter, the Defendants dispute the existence of the agreement under which the Plaintiff brings its claims.  All parties acknowledge the existence of a written contract—the Allmerica Career Agent Agreement—that contains provisions relating to the issues of paying commissions and not interfering with the business of other agents.  However, the Plaintiff, Money Management, is not a party to that agreement and is not entitled to bring any claims under it.  Furthermore, Donald Rice, who is a party to a career agent agreement, cannot bring suit on the agreement in this Court because his claims are subject to NASD arbitration.  As a result, the claims pending before this Court are brought not under a written career agent agreement, but rather under an alleged  separate, oral agreement.  According to the Plaintiff, the agreement was formed in 1993, was oral and was not set down in writing, was between the Plaintiff Money Management and Allmerica, and provided for the

9

payment to Money Management by Allmerica of certain commissions and for a promise by Allmerica not to interfere with certain of Money Management's business relationships.

The Defendants move for summary judgment on the Plaintiff's claims on four grounds: (1) that the oral agreement sued upon is void under the Alabama Statute of Frauds; (2) that the Plaintiff has failed to adduce sufficient evidence of a meeting of the minds necessary to establish the existence of the alleged agreement; (3) that Porraro cannot be personally liable for any breach of contract committed in his capacity as an agent of Allmerica; and (4) that the Plaintiff has failed to adduce any competent summary judgment evidence of damages.  Each ground for summary judgment is reviewed in turn.

A.    *Statute of Frauds*

The Alabama Statute of Frauds identifies certain contracts that must be in writing to be valid.  *See* ALA. CODE OF 1975, § 8-9-2.  Subsection (1) of the Alabama Statute of Frauds applies to "[e]very agreement which, by its terms, is not to be performed within one year from the making thereof."  *Id.* § 8-9-2(1).  The Defendants argue that the agreement upon which the Plaintiff brings its claims is covered by subsection (1) because the agreement is "perpetual" and therefore is incapable of being performed in less than a year.  (*See* Def. Br., doc. 61, at 10.)  In support of their

assertion that the alleged agreement is "perpetual," the Defendants point to the deposition testimony of Rice where he testifies to his understanding that the agreement was to be in effect "from now on."  (*See* Rice Dep. at 79.)

Accepting, *arguendo*, that the agreement was intended to be effective "from now on," the Defendants err in deducing from this that the agreement could not be performed in less than a year.  To the contrary, contracts that lack a definite term as to duration are deemed "indefinite" and therefore generally are terminable at-will. *See Hickenbottom v. Preferred Risk Mutual Ins. Co.*, 514 So.2d 881, 882 (Ala. 1987) ("Contracts without a fixed term are terminable at the will of either party and may be terminated for any cause or no cause."); WILLISTON ON CONTRACTS, § 4:19 ("[A] promise contemplating continuing performance for an indefinite period of time is to be interpreted as stipulating only for performance terminable at the will of either party."); *see also Besco, Inc. v. Alpha Portland Cement Co.*, 619 F.2d 447, 449 (5th Cir. 1980) ("[T]he construction of a contract conferring indefinite duration is to be avoided *unless compelled by the unequivocal language of the contract*.") (citation omitted).  It is well-settled that only contracts that are incapable of performance within a year fall within the statute.  *See Kitsos v. Mobile Gas Service Corp.*, 404 So.2d 40, 41 (Ala. 1981); *Land v. Cooper*, 34 So.2d 313, 316 (Ala. 1948).  As an agreement terminable at-will, neither the commission agreement nor the agreement

11

not to interfere would be within the statute because each agreement could be fully

discharged and terminated within a year without a breach of the agreement occurring.

Accordingly, the agreements alleged by the Plaintiff are not covered by the statute of

frauds and therefore are not void merely because they were not reduced to writing.

    B.    *Uncertainty of Terms*

The Defendants' second argument is that the agreement alleged by the Plaintiff

is void because the provisions of the alleged agreement are so indefinite, uncertain,

and incomplete that the reasonable intentions of the contracting parties cannot be

fairly and reasonably distilled from them.  In part, the Defendants base this argument

on the fact that the alleged agreement lacked terms regarding its termination.  (*See*

Def. Br., doc. 20, at 12-13.)  As explained, *infra* in section A of this Opinion, that

argument fails because the lack of a specific term of duration merely causes the

agreement to be terminable at-will.  The other flaw in the Defendants' argument is

that Alabama law "does not favor the destruction of contracts on the ground of

uncertainty.  For a court to treat a contract as void on the ground of uncertainty, the

contract must be so vague and indefinite in its terms that the intention of the parties

cannot be fairly and reasonably inferred from them."  *S. United Fire Ins. Co. v.

Knight*, 736 So.2d 582, 585 n.2 (Ala. 1999).

With regard to the commission agreement that the Plaintiff alleges, it is clear

that this agreement is not unenforceably vague because the undisputed evidence shows that the Defendants performed the agreement by paying commissions to Rice from 1993 until December 31, 2000, when Rice's contract as an Allmerica career agent was terminated.  (Rice Dep. at 393.)  With regard to the agreement not to interfere, the Plaintiff has adduced sufficient evidence to create genuine issues of fact regarding the existence of an enforceable agreement.  As alleged by Plaintiff, under the agreement the Defendant Porraro and his agents were not to seek the business of employees or retirees of the Southern Company who lived in the State of Alabama.[4] (Rice Dep. at 122.)   Based upon Rice's testimony, a reasonable jury could find that such an agreement existed and find that the Defendants violated the agreement by soliciting the business of Southern Company employees living in Alabama. Moreover, "[w]here a contract is verbal and detailed by witnesses, its terms and the intention of the parties should be found by the jury."  *MOCO, Inc. v. Gaines*, 484 So.2d 470, 472 (Ala. Civ. App. 1985) (citing *Keel v. Weinman*, 98 So.2d 611 (Ala. 1957)).   Accordingly, the Defendants' argument that the agreement is void for

---

[4]Indeed, the non-interference agreement alleged by Plaintiff is similar to the restrictions contained in Allmerica's career agent agreement.  (*See, e.g.,* Def. ex. 2, ¶ 6 (prohibiting agent from interfering with Allmerica's relationship with other agents or with policies that the agent did not personally solicit), ¶ 8 (confining career agent to district assigned to Allmerica's general agent unless otherwise authorized).)   Defendants do not allege that these provisions are unenforceably vague.

vagueness is without merit.[5]

C.   *Porraro's Personal Liability Under the Contract*

It is well-settled that "agents cannot be held liable for a principal's breach of contact."   *Harrell v. Reynalds Metals Co.*, 495 So.2d 1381, 1389 (Ala. 1986). Because the Plaintiff has conceded its tort claim, Plaintiff's only remaining claims against Porraro are for breach of contract and for quasi-contract.  At all times relevant to the Plaintiff's complaint, it is undisputed that Porraro was Allmerica's agent. (Nowlin Aff. at 4.)  In fact, in Plaintiff's brief opposing summary judgment, Plaintiff acknowledges that, when making the alleged agreement with the Plaintiff in 1993, Porraro was "acting on behalf of Defendant Allmerica …." (*See* Pla. Br., doc. 64, at 5.)  Because Porraro's role in the contract was as an agent of Allmerica, Porraro cannot be held liable under the contract alleged by the Plaintiff.   Accordingly, Defendant Porraro is entitled to summary judgment on the Plaintiff's breach of contract and quasi-contract claims.

_____

[5]One point that does seem vague is whether Rice was acting in his capacity as a career agent or as a principal of Money Management (then Brooks-Rice) when he made the alleged agreement with Allmerica in 1993.  Rice himself admits that the agreement to split commissions "had to be a split that was made as agents" and further confirms that all commissions were paid from Allmerica to him, not Money Management.  (Rice Dep. 372-373.)  This evidence tends to establish that Rice made the agreement as a career agent, and not on behalf of Money Management.  However, Rice was firm in his testimony that Money Management was a party to the agreement and that he communicated this detail to Allmerica when the agreement was made. (Rice Dep. 52-53, 64, 66-67, 76.)  Consequently, the question has been placed into genuine dispute and is not susceptible to resolution on summary judgment.

D.   *Damages*

Damages is a necessary element of a claim for breach of contract.  *See Spring Hill Lighting & Supply, Inc. v. Bethany Baptist Church*, 381 So.2d 198, 198 (Ala. 1980).  Damages awarded for a breach of contract should return the injured party to the position he would have been in had the contract been fully performed.  *Parsons v. Aaron*, 849 So.2d 932, 949 (Ala. 2002).  "In computing damages for breach of contract, a jury need not achieve 'mathematical precision'.… However, damages may not be awarded where they are remote or speculative. A jury must have some reasonable basis for the amount of its award."  *Id.*

Money Management's sole claim with regard to the nonpayment of commissions is that the Defendants failed to pay Money Management its share of commissions on annuities and other Allmerica products sold to Southern Company employees through seminars put on by career agents working for Porraro in Georgia.  The fee split was administered by Allmerica, (Rice Dep. at 373), it was to be paid to Rice as an agent of Allmerica, (*id.* at 372-73), and the commissions were generated by sales of Allmerica products, such as annuities.  (*Id.* at 362-64.)

Defendants argue that the Plaintiff has failed to adduce any competent evidence probative of damages.  In its brief, Plaintiff did not dispute the absence of evidence. Instead, Plaintiff argued that it should not be faulted for the absence because "a

15

precise calculation of damages by Plaintiff is wholly impossible based upon the discovery provided by Defendants, and thus, any objection by Defendants is inappropriate." (Pla. Br., doc. 64, at 18.)  At oral argument, Plaintiff stated that it was relying on the deposition testimony of Rice to sustain its claim for damages.  At the Court's instruction, following the hearing on the motion the Plaintiff submitted a notice directing the Court to the specific pages where its evidence of damages could be found.  (*See* doc. 69.)  However, even Plaintiff's supplemental citation to the deposition of Rice fails to provide any evidence of damages.

The only evidence relating to the question of damages that Rice provides is a spreadsheet document he generated in which he attempts to calculate how much he is owed in commissions.  (*See* Pla. ex. 9; Rice Dep. at 419-81.)  Defendants argue that this document must be rejected as speculative because Plaintiff fails to identify any specific sums of money received by Defendants of which the Plaintiff is owed a share.  Instead, Plaintiff's representative Rice used Porraro and Associates' total first-year commissions for the years 1996-1999, and then applied numerous assumptions to these numbers to produce an estimate of how much Rice believed that the Defendants owed the Plaintiff in commissions.   There are two significant problems with Rice's methodology.

First, Rice's method assumes the causal link between the alleged breaches of

contract and the amount of damages he claimed without any evidence justifying the connection.  The Plaintiff alleges that the Defendants breached the agreement by soliciting business from Southern Company employees in Georgia through seminars, and he relies on testimony from Tillet that she conducted approximately twenty seminars for Southern Company employees, in addition to the four to six seminars that she conducted jointly with Rice.  (*See* Tillet Dep. 12, 44.)  However, the Plaintiff adduces no evidence linking those seminars to any amount of commissions earned by the Defendants.  Instead, Rice simply assumes that 20% of Porraro's first-year commissions derived from seminars.   (Rice Dep. at 465-67.)  However, Porraro's agency may have obtained the business of the Southern Company employees from any variety of means other than seminars, such as through referrals or from any other form of marketing.  As a threshold matter, Rice has failed to show that his numbers have any relationship with the alleged breaches of contract.

Second, Rice layered his calculations with several additional levels of assumption, each time increasing the tenuousness of his estimate.  In addition to his assumptions that 20% of Porraro's first-year commissions were derived from seminar sales, Rice projected first-year commission figures for the years 1993, 1994, 1995, 2000, 2001, 2002, and 2003 based upon the average growth-rate in Porraro's first-year commissions from 1996 through 1999 (*id.* at 428-32); he assumed that 5% of

Porraro's policies would lapse per year and 95% would be renewed because 5% was Allmerica's nationwide average lapse rate during some unspecified period of time (*id.* at 452-57); Rice assumed, based only on his recollection and without consulting any documentation, the amount of commissions that he was actually paid by Allmerica for Southern Company business generated through seminars held in Georgia for the years 1993 through 2000 (*id.* at 469); and Rice assumed an interest rate of 6% based upon "what [he] considered a normal interest rate over a long period of time" but without reference to any actual interest rates in any specific year or years. Consequently, even assuming *arguendo* that Rice had shown how much the Defendants actually had derived from its seminar solicitations of Southern Company employees, even then Rice's calculations regarding the amount of commissions that Money Management is due are impermissibly speculative.

After oral argument, Plaintiff submitted to the Court a notice citing to specific portions of the record that the Plaintiff contends supports its claim for damages.  (*See* doc. 69, which cites to Rice Dep. at 351-56; 491-524.)  These citations support only the proposition that Money Management suffered a decline in business after 2000.[6]

---

[6]*See* Rice Dep. at 494 ("[W]e were growing with leaps and bounds until Porraro come along and until—and especially after the fact when 2000—when we were let go in 2001, and 2002, we've been fighting to retain our business from this group of agents that Allmerica allowed to have all the names and addresses and that started moving our business and started going after our clients …."); *see also* Pla. Br. at 9 ("From approximately 1999-2000, the growth of Plaintiff MMS's Southern Company/Alabama Power Company business began to slow, and in

18

Evidence of damages arising after 2000 is immaterial, however, because on November 13, 2000, Allmerica notified the principals of Money Management that it was terminating their contracts.  This notice of termination is sufficient to terminate any alleged at-will agreements between Money Management and Allmerica as well, including the commission and non-interference agreements alleged by the Plaintiff. Consequently, Money Management cannot claim damages arising from losses incurred after 2000 because it failed to allege facts supporting the existence of any contract during that period.

The Plaintiff has failed to adduce evidence which would afford a reasonable jury a basis to fix damages on the Plaintiff's alleged breach of contract claim. Accordingly, the Defendant's motion for summary judgment as to the breach of contract claim is due to be **GRANTED**.

## II.    Unjust Enrichment

Defendants also move for summary judgment on the Plaintiff's claim of unjust enrichment.  Alabama law on unjust enrichment provides that "[t]he rule is that if one knowingly accepts services rendered by another, and the benefit and result thereof, the law implies a promise on the part of the one who so accepts with knowledge, to pay the reasonable value of such services rendered.  In order to succeed on a claim

---

approximately 2001 is [sic] started to drop.").

of unjust enrichment, the plaintiff must show that he had a reasonable expectation of compensation for his services." *Associates Commercial Corp. v. Roberts*, 844 So.2d 1256, 1261 (Ala.Civ.App. 2002) (quoting *Richards v. Williams*, 231 Ala. 450, 453, 165 So. 820, 823 (1936)) (citation omitted).

There are at least two deficiencies that are fatal to the Plaintiff's unjust enrichment claim. First, unjust enrichment requires proof that the Plaintiff provided uncompensated service to the Defendants. The record here is devoid of evidence that MMS provided any uncompensated service to Allmerica. Rather, the record shows that Rice provided the service to Allmerica, and that he received compensation in the form of commissions for all services rendered. Rice acknowledges that until December, 2000, he received split commissions for sales arising from the seminars he gave in Georgia. (*See* Rice Dep. at 393.) In Plaintiff's summary judgment exhibit nine, Rice estimates that these commissions amounted to $53,000. (*See* Pla. ex. 9.) The unjust enrichment theory allows for "the law [to] fictitiously suppl[y] the promise [to pay for the labor or services of another] to prevent a manifest injustice or unjust enrichment." *Associates Commercial Corp.*, 844 So.2d at 1261. Because the Plaintiff has failed to show evidence of any uncompensated service, as a matter of law there is no manifest injustice.

The second deficiency is that the Plaintiff has failed to present any evidence

of what would constitute the reasonable value of the services provided.  It is well-established that where "there [i]s no evidence as to the reasonable value of [the] services, the jury verdict … is unsupported and cannot stand" *Associates Commercial Corp.*, 844 So.2d at 1262 (quoting *Loggins v. Robinson*, 738 So.2d 1268, 1271 (Ala.Civ.App.1999)).  As explained above, Plaintiff has adduced evidence only of the amount of first-year commissions earned by the Defendant Porraro's entire agency.  This hardly constitutes evidence of the reasonable value of the services rendered by Rice in conducting half-a-dozen seminars in 1993 to 1996.

Lastly, the Plaintiff has failed to present any evidence that Porraro engaged in fraud, coercion, or abuse of a confidential relationship.  Consequently, any arguments that the Plaintiff might make under *Welch v. Montgomery Eye Physicians*, 891 So.2d 873 (Ala.2004), are unavailing.

The Plaintiff has failed to create genuine issues of fact as to the existence of a claim for unjust enrichment.  Accordingly, the Defendants are entitled to summary judgment on this claim.

## CONCLUSION

The Defendants are entitled to summary judgment on Plaintiff's claims of breach of contract, unjust enrichment, and tortious interference.  A separate order will be entered.

**DONE** and **ORDERED** this 21st day of April, 2005.


**VIRGINIA EMERSON HOPKINS**
United States District Judge